UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
IRMA BOYCE-HERBERT,

                       Plaintiff,

      - against -

THE NEW YORK AND PRESBYTERIAN
HOSPITAL,

                       Defendant.
------------------------------------------------------------ X

**MEMORANDUM AND ORDER**

17-cv-01388 (AMD) (SJB)

**ANN M. DONNELLY,** United States District Judge:

On March 10, 2017, the plaintiff brought this action against her former employer, defendant New York and Presbyterian Hospital, alleging that the defendant wrongfully terminated her and did not promote her in violation of Title VII and the ADEA. (ECF Nos. 1, 8.) The defendant moved for summary judgment. (ECF Nos. 48, 52.) For the reasons that follow, the defendant's motion is granted.

## BACKGROUND

Defendant New York and Presbyterian Hospital is a not-for-profit corporation which provides inpatient, ambulatory, and preventative care to patients. (Defendant's Rule 56.1 Statement ("Def.'s 56.1") ¶ 1, ECF No. 53.)[1] The plaintiff, a 66-year-old African-American

---

[1] The plaintiff, who is represented by counsel, did not submit a Rule 56.1 counter-statement of undisputed facts, despite two orders to do so, and did not explain her failure to do so. Nor did she submit any brief in opposition to the defendant's motion. Instead, she submitted a declaration, aspects of which conflict with her deposition testimony. (Plaintiff's Declaration ("Pl. Decl."), ECF No. 57.) I have reviewed the entire record in connection with this motion, including the defendant's 56.1 statement, and construe the facts in the light most favorable to the plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

1

woman, began working for the defendant in 1991 as a unit clerk. (Def.'s 56.1 ¶¶ 7-8; Plaintiff's Deposition ("Pl. Dep.") 289:17-19, ECF Nos. 61-1, 61-2.) She claims that the defendant failed to promote her, placed her on "a different trajectory" from her white or male colleagues, paid her less than similarly situated white employees and male employees, made false claims against her and suspended her unfairly. (ECF No. 8 ¶¶ 5-6, 20.) Ultimately, the defendant fired her in 2015. (Def.'s 56.1 ¶ 74.)

In 2009, the defendant assigned the plaintiff to 2 North Unit, a medical and surgical unit for patients preparing to undergo kidney transplants. (Def.'s 56.1 ¶¶ 22, 24.) Deborah Stetz, a white woman over the age of forty, became her direct supervisor. (Def.'s 56.1 ¶¶ 21, 22.) From 2009 to 2014, the plaintiff worked the day shift alongside another unit clerk, Tawanna Rutland, an African-American woman. (Def.'s 56.1 ¶¶ 25-27.) After the defendant promoted Ms. Rutland to another position in June 2014, the plaintiff worked with David Von Kaenel, a 57-year-old white man hired as the unit's second unit clerk. (Def.'s 56.1 ¶¶ 27-29.)[2] Her responsibilities included answering telephones, greeting patients' families and visitors, ordering office supplies, keeping the printers and fax machines stocked with paper and toner, and tracking patients' admissions and discharges to and from her assigned unit. (Def.'s 56.1 ¶ 19.)

Beginning in 2009, the plaintiff received citations and complaints for poor work performance, inappropriate behavior, and other misconduct. The plaintiff asserts that these citations and complaints were unfounded. (Pl. Decl. ¶ 20.) When she began working in her unit in 2009, she overheard Mary Prufeta, the Director of Nursing, tell Ms. Stetz to "mak[e] sure" to issue "a number of citations" against the plaintiff so that the defendant would have "documentary

---

[2] The defendant assigned two other unit clerks to work in the plaintiff's unit for the evening shift—Heather Manning and Thelma Carberry, two African-American women in their sixties. (Def.'s 56.1 ¶¶ 29, 30.)

2

evidence" to "get rid of [her]." (*Id.* ¶ 12.) According to the plaintiff, the resulting suspensions were part of a pattern of discrimination culminating in her termination in 2015.

Both parties agree that between 2009 and 2015, Ms. Stetz and Ms. Prufeta issued multiple corrective actions to the plaintiff and suspended her, but the defendant denies that its decisions were motivated by discrimination. The defendant says the plaintiff was disruptive, violated hospital rules, did not follow supervisors' instructions, and used abusive and inappropriate language towards coworkers and supervisors. (Def.'s 56.1 ¶¶ 23, 34, 37-41, 42-70; ECF Nos. 51-1 through 51-9.) According to Ms. Stetz, the plaintiff on a number of occasions raised her voice to supervisors and staff members and refused requests to help staff members. (ECF No. 51.) She also spoke rudely to a patient's visitor, who complained to staff about the incident. (Def.'s 56.1 ¶ 42.) In addition to the corrective actions, which laid out the basis for the disciplinary action, Ms. Stetz made notes about her conversations with the plaintiff and the basis for each corrective action. (ECF Nos. 51-1 through 51-9.) The plaintiff's declaration—the only document she has filed in opposition to the defendant's motion—does not address many of these suspensions and corrective actions. (Pl. Decl.) For those that she does address, she claims that they did not happen, that Ms. Stetz and Ms. Prufeta fabricated allegations, or that her supervisors and coworkers behaved inappropriately. (*Id.*)

In addition to Ms. Stetz's and Ms. Prufeta's complaints, other supervisors also complained about the plaintiff's behavior and work performance between 2009 and 2015. In April 2012, Joanne Modica, a patient care director supervising the plaintiff's unit, issued a corrective action to the plaintiff for engaging in three instances of "inappropriate and disruptive behavior," including that the plaintiff "responded disrespectfully and with a threatening demeanor towards her Patient Care Director," (ECF No. 51 ¶ 14; ECF No. 49, Ex. 8; Def.'s 56.1

3

¶¶ 35-37), and suspended the plaintiff for three days. (Def.'s 56.1 ¶ 38; ECF No. 49, Ex. 8; ECF No. 51 ¶ 14). According to the plaintiff, Ms. Modica said she did not want to issue the corrective action or suspension but had been told to do so. (Pl. Dep. 177:5-20.) A month later, Ms. Modica issued the plaintiff another corrective action for "inappropriate and disruptive behavior" when the plaintiff "responded disrespectfully to coworkers." (ECF No. 49, Ex. 9; Def.'s 56.1 ¶ 38.) Ms. Modica suspended the plaintiff for an additional five days. (*Id.*) The plaintiff similarly disputes that this incident occurred, and maintains that Ms. Modica once again told her that there was no basis for the corrective action. (Pl. Dep. 180-184; Def.'s 56.1 ¶ 38.)

In October of 2012, two other patient care directors in other units complained to Ms. Stetz about the plaintiff. Chip Holmes, a patient care director from a critical care unit, complained that the plaintiff refused his request to order a patient escort. (ECF No. 51 ¶ 16; Pl. Dep. 186-187, 190:7-21.) At her deposition, the plaintiff said that she tried to ask for the patient's information so that she could help arrange the patient transport, but that Mr. Holmes "stormed off." (Pl. Dep. 190:11-21.) That same month, Ms. Stetz received a second complaint from another patient care director, Natalie Mohamed, who reported that the plaintiff refused to help train a newly-hired unit clerk. (ECF No. 51 ¶ 17.) The plaintiff responds that she did try to help Ms. Mohamed with her request, but that there was a misunderstanding. (Pl. Dep. 189-192.)

In June of 2015, staff members reported that the plaintiff raised her voice and pointed her finger at a nurse in another unit. (Def.'s 56.1 ¶ 47; ECF No. 51.) The defendant's human resources department formally investigated the complaint, and after consulting with Ms. Stetz and the reporting supervisor, issued a final written warning to the plaintiff on June 11, 2015. (Pl. Dep. 219:13-25, 253:15-254:9; ECF No. 49, Ex. 11; ECF No. 50 ¶ 19.) The plaintiff does not address this incident in her declaration.

Two additional incidents occurred after the defendant issued a final written warning to the plaintiff. First, Ms. Stetz asked the plaintiff to replace the toner for a unit printer, which physicians and nurses used for patient progress notes, medication orders, and other patient care documents; without the printer, doctors and nurses could not print these important documents, posing a risk to patients. (Def.'s 56.1 ¶¶ 55-56; ECF No. 51 ¶¶ 23-27.) The plaintiff did not replace the toner for an hour and a half. (Def.'s 56.1 ¶ 60; ECF No. 51, Ex. 8.) She claims she could not find replacement toner and had to order it from another unit. (Pl. Decl. ¶¶ 21-24.)

The next day, Ms. Stetz learned that the plaintiff had discharged a patient incorrectly. (ECF No. 51 ¶ 28-29; ECF No. 51, Ex. 9.) According to the report—which is generated when situations arise that could harm or injure a patient—the plaintiff discharged the patient, and after she realized her mistake, asked patient admissions to reverse the discharge. (ECF No. 51 ¶ 28-29; ECF No. 51, Ex. 9.) The admissions representative told her to inform the nurse that she would have to re-order the patient's medication. The plaintiff went on her lunch break without telling the nurse about the issue. (ECF No. 51 ¶ 26; ECF No. 51, Ex. 9.) The assigned nurse noticed that the patient's chart was missing, confirmed that the patient should not have been discharged, and administered the patient's medication. (ECF No. 51 ¶ 26; ECF No. 51, Ex. 9.) According to the defendant, if the assigned nurse had not recognized the mistake, the patient would have missed a scheduled dose of medication. (*Id.*)

Ms. Stetz contacted Nayisha (Gonzalez) Luquis in the human resources department. (Def.'s 56.1 ¶ 71.) Ms. Stetz recommended terminating the plaintiff's employment, citing her disciplinary history and the two recent incidents. (Def.'s 56.1 ¶¶ 71-73.) Ms. Luquis spoke with the director of human resources and reached the same conclusion. (*Id.* ¶ 73.) On October 16,

5

2015, Ms. Stetz and Ms. Prufeta met with the plaintiff and informed her that her employment had been terminated. (*Id.* ¶ 74.)

On November 5, 2015, the plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") accusing the defendant of discriminating against her based on her age, creed, race, color, and sex. (Def.'s 56.1 ¶ 2.) The NYSDHR notified her that her verified complaint would also be filed with the U.S. Equal Employment Opportunity Commission ("EEOC") on November 5, 2015. (*Id.* ¶ 3; Pl. Dep. 24-25, 39-40; ECF No. 49, Ex. 3.) On May 2, 2016, the NYSDHR issued a Determination and Order After Investigation, concluding that there was no probable cause to believe that the defendant discriminated against the plaintiff. (*Id.* ¶ 4.) On August 5, 2016, the EEOC mailed a Dismissal and Notice of Rights to the plaintiff. (*Id.* ¶ 5.) The plaintiff commenced this action by filing a complaint on March 10, 2017, which she amended on June 1, 2017. (ECF Nos. 1, 8.)[3]

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). "Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party "may

---

[3] The individual defendants were dismissed *sua sponte* on March 24, 2017. (ECF No. 5.)

not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). The court is to resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).

Courts should exercise "an extra measure of caution" when considering summary judgment motions in discrimination actions. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)); *see also Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("there is a need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent[.]") (citation and internal quotation marks omitted). However, summary judgment "remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *Holtz*, 258 F.3d at 69 (citation omitted). Even in an action alleging discrimination, the plaintiff "must provide more than conclusory allegations to resist a motion for summary judgment." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (citation omitted).

## DISCUSSION

The plaintiff alleges discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 (Title VII), and the Age Discrimination in Employment Act of 1967 (ADEA). The defendant moves for summary judgment on all of the plaintiff's claims.

### I. Timeliness

A plaintiff must commence an action within 90 days of receiving a Notice of Right to Sue from the EEOC. *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996); 42

U.S.C. § 2000e-5(f)(1) (governing Title VII claims); 29 U.S.C. § 626(e) (governing ADEA claims). Although the EEOC sent the Notice of Right to Sue on August 5, 2016, the plaintiff did not commence this litigation until March 10, 2017, 217 days after the EEOC's letter was sent. (ECF No. 1.)

"The requirement that a lawsuit be brought within 90 days of receiving a right to sue letter from [the] EEOC is treated like a statute of limitations." *Manley v. New York City Police Dep't*, No. 05-CV-679 (FBLB), 2005 WL 2664220, at *1 (E.D.N.Y. Oct. 19, 2005) (citation omitted). Therefore, under certain circumstances, the ninety-day filing requirement can be waived, estopped, or equitably tolled. *South v. Saab Cars USA, Inc.*, 28 F.3d 9, 11 (2d Cir. 1994). However, the plaintiff does not provide any valid basis for extending the right-to-sue period, and I do not find any basis for doing so in the record.

In her declaration, the plaintiff states that she did not receive the right to sue letter, and that she asked the EEOC to send it to her in December 2016. (Pl. Decl. ¶ 4.) She also says the replacement notice she received on December 30, 2016 was "destroyed by a flood" caused by a leak in her apartment. (*Id.* ¶¶ 5-6.)[4] In her deposition, however, the plaintiff said she did not remember if she had gotten the notice, but acknowledged that it was properly addressed to her. (Pl. Dep. at 58:15-60:7.) She did not mention the conversation with the EEOC about a subsequent notice, the replacement notice, or say that a leak in her apartment destroyed her copy of the notice. (*Id.*) "[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

---

[4] In her first complaint, which the plaintiff filed *pro se*, she stated that the December 2016 notice was "damaged because of a water leak." (ECF No. 1 at 6.)

In any event, the plaintiff does not provide a reason to toll the ninety-day requirement. Her claim that she did not receive the letter, even if credited, is not sufficient; a plaintiff's assertion that she did not receive a properly mailed notice, without more, cannot be a basis for extending or equitably tolling the 90-day requirement. *See, e.g., Smith v. Chase Manhattan Bank*, No. 97-CV-4507 (LMM), 1998 WL 642930, at *1, 4 (S.D.N.Y. Sept. 18, 1998) (finding equitable tolling warranted where plaintiff said he did not receive an EEOC notice "because the EEOC sent it to an incorrect address," plaintiff had previously "notified the EEOC of the change in his address," there had not been "any lack of diligence on plaintiff's part," and he commenced court action "within ninety days" after receiving the notice). "[I]n the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (citation omitted). The plaintiff's claims are therefore time-barred. Nevertheless, I address the merits of the plaintiff's claims in an abundance of caution.

## II. Merits

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" because of the individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Under the ADEA, it is unlawful for an employer to "discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).

Disparate treatment claims under Title VII and the ADEA are analyzed using the *McDonnell Douglas* burden-shifting framework. *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209-10 (E.D.N.Y. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). Under the framework, the plaintiff must first establish a *prima facie* case of

9

discrimination. *See Bowen-Hooks* at 209-10; *see also Holleman v. Art Crating Inc.*, No. 12-CV-2719, 2014 WL 4907732, at *46 (E.D.N.Y. Sept. 30, 2014) (citations omitted). Once the plaintiff makes that showing, "the burden of production [shifts] to the employer and requir[es] the employer to come forward with its justification for the adverse employment action against the plaintiff." *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). If the employer meets this burden, "the presumption 'drops out of the picture'" and the plaintiff must demonstrate that the employer's explanation is pretextual. *Id.* (citation omitted); *see also Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013) (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 (2003)).

To establish a *prima facie* case of discrimination, the plaintiff must show that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she has suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802-04 (1973); *Littlejohn*, 795 F.3d at 307. The defendant does not dispute that the plaintiff, an African-American woman, is a member of a protected class. Nor does the defendant deny that the plaintiff was qualified for her position or that she suffered an adverse employment action. The only disputed issue is whether the defendant fired the plaintiff under circumstances giving rise to an inference of discrimination.

The plaintiff has not established any inference of discrimination. She asserts in her declaration that her supervisors fabricated the complaints against her and that she was "treated differently" and "harass[ed]" as she became older, but she does not say that her supervisors or coworkers ever disparaged her because of her age, race, gender, or religious affiliation. (Pl. Decl ¶¶ 13, 40.) In fact, in her deposition, the plaintiff agreed that neither her supervisors nor her coworkers disparaged her because of her age, race, gender, or religious affiliation. Rather, the

plaintiff attributed her employer's dislike of her to the fact that they did not view her as a "team player" because she "never came in and discussed any of [her] family doing what [they're] going to do, where [they] went on vacation or whatever." (Def.'s 56.1 ¶ 52; Pl. Dep. 201:18 to 202:2.) Thus, the plaintiff has failed "to present even minimal proof that her suspension and termination were driven, even in part, by discrimination." *Placide-Eugene v. Visiting Nurse Serv. of N.Y.*, 86 F. Supp. 3d 132, 148 (E.D.N.Y. 2015) (granting summary judgment). Her "allegations are not supported by a single piece of evidence other than [the plaintiff's] own opinions and conjectures." *Morris v. Ales Grp. USA, Inc.*, No. 04-CV-8239 (PAC) (THK), 2007 WL 1893729, at *8 (S.D.N.Y. June 29, 2007). Drawing all reasonable inferences in the light most favorable to the plaintiff, no reasonable jury could infer that the defendant acted with a discriminatory motive. *See Caines v. City of New York*, No. 13-cv-676 (VEC), 2015 WL 13021892, at *7 (S.D.N.Y. July 8, 2015) (citing *Bikerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1998) (courts should "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture" at the *prima facie* stage)).

Because the plaintiff has not established a *prima facie* case, it is unnecessary to undertake the burden-shifting analysis. Nevertheless, even if the plaintiff had established a *prima facie* case, the defendant has articulated legitimate, non-discriminatory reasons for terminating her employment. She was rude to coworkers and supervisors and refused to perform duties that were unquestionably part of her job, leading to suspensions, corrective actions and warnings. In two instances, which ultimately led the defendant to fire her, the plaintiff's behavior affected patient safety. Under these circumstances, the defendant's decision to fire the plaintiff was legitimate and non-discriminatory. *Williams v. Woodhull Med. & Mental Health Ctr.*, 891 F. Supp. 2d 301,

315-16 (E.D.N.Y. 2012) (finding that the employer's concern for the quality of care to patients following the plaintiff's multiple instances of poor judgment established a legitimate, non-discriminatory reason for its actions). The plaintiff cites no evidence of discrimination, and the court will not second guess the defendant's decision. *Sanders v. Mount Sinai Med. Ctr.*, No. 98-CV-828 (AGS), 1999 WL 1029734, at *6 (S.D.N.Y. Nov. 10, 1999) (dismissing claims on summary judgment where the employer showed that the plaintiff's failures impacted patient care).

The plaintiff's claim that Ms. Stetz and Ms. Prufeta fabricated accusations to "punish [her] for complaining about the hostile work environment" is not persuasive. (Pl. Decl. ¶¶ 13-14.) Not only does the record show that the suspensions and corrective actions were based on actual violations, it also demonstrates that other coworkers and supervisors made similar complaints about the plaintiff's work performance. Other supervisors and colleagues—and once, an outside visitor—complained that the plaintiff raised her voice, argued with colleagues, and behaved rudely and unprofessionally.[5] The plaintiff's "profound inability to get along with her co-workers . . . represents a legitimate, non-discriminatory reason" for the defendant's decision to take disciplinary action. *Mieri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985); *Boata v. Pfizer, Inc.*, No. 10-CV-4390 (KBF), 2013 WL 432585, at *6 (S.D.N.Y. Jan. 31, 2013), *aff'd*, 554 F. App'x 73 (2d Cir. 2014) (finding that employer's "evidence that [the plaintiff] was unable to get along with others in his workplace" served as a legitimate, non-discriminatory explanation for

---

[5] Some of the supervisors the plaintiff accuses of discriminating against her—including Ms. Stetz, who is over the age of 40, and Shara Walters, who is an African-American woman—are members of the same protected class as the plaintiff. (Def.'s 56.1 ¶¶ 63, 89.) These facts undercut the claim that either supervisor acted with a discriminatory intent based on the plaintiff's gender, race or age. *Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) ("[a] well-recognized inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class.").

the challenged employment action), *aff'd*, 554 F. App'x 73 (2d Cir. 2014) (footnote and citation omitted). There is no evidence that the defendant's reasons for firing the plaintiff were pretextual, or that the plaintiff's membership in a protected class was the "real reason" for the adverse action. *See Ruiz v. Cty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010); *Chapotkat v. Cty. of Rockland*, 605 F. App'x 24, 26 (2d Cir. 2015) ("[T]o resist summary judgment on an ADEA claim successfully, a plaintiff must demonstrate that a reasonable jury could conclude by a preponderance of the evidence that the employer's explanations were pretextual and that, but for the plaintiff's age, the employer would not have taken the action it did.") (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010)).

The plaintiff's failure to promote claims and pay discrimination claims similarly fail on the merits. The plaintiff asserts that she was "overlooked for promotion for more than two decades." (ECF No. 57 ¶ 35.)[6] The plaintiff does not say that she "applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she [ ] generally requested promotion." *Johnson v. Delphi Energy & Engine Mgmt. Sys., Inc.*, No. 98 Civ. 7872, 1999 U.S. App. LEXIS 10025, at *2-3 (2d Cir. May 20, 1999) (quoting *Brown*, 163 F.3d at 710) (quotation marks omitted). In the absence of any other evidence that the plaintiff applied for—or was denied—a promotion, her failure to promote claims must be dismissed.

As for the plaintiff's pay discrimination claims, she does not dispute that she earned more than the only white, male comparator she identifies. (Def.'s 56.1 ¶¶ 28, 83-88.) Nor does she deny that the highest paid unit clerks employed by the defendant were African-American women

---

[6] The only evidence in the record relating to promotions shows that in 2014, Ms. Stetz promoted Ms. Rutland, an African-American woman working as a unit clerk in the same unit as the plaintiff. (Pl. Decl ¶ 36; *see also* Def.'s 56.1 ¶ 27.)

over the age of 40. (Def.'s 56.1 ¶¶ 29-30, 86.) Even if these facts were not fatal to the plaintiff's claims, she does not respond to or address any of the defendant's arguments about her pay discrimination claims, or even renew the original claim in her declaration. Because she has not addressed this claim in her opposition, "the Court deems it abandoned." *Aouatif v. City of New York*, No. 07-CV-1302 (RRM) (JO), 2019 WL 2410450, at *14 (E.D.N.Y. May 31, 2019); *see also Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) (holding that "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way," and dismissing claims not addressed in plaintiff's opposition) (citing *Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (collecting cases)). Therefore, the plaintiff's remaining claims are also dismissed.

## CONCLUSION

For the reasons set out above, the defendant's motion for summary judgment is granted.

**SO ORDERED.**

                                                    s/Ann M. Donnelly

                                                    Ann M. Donnelly
                                                    United States District Judge

Dated: Brooklyn, New York
       January 22, 2020